UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| GARY CONDER,[1] | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )    Case No. 1:18CV00072 PLC |
| | ) |
| ANDREW M. SAUL,[2] | ) |
| **Commissioner of the** | ) |
| **Social Security Administration,** | ) |
| | ) |
|     **Defendant.** | ) |

## MEMORANDUM AND ORDER

Plaintiff Gary Conder seeks review of the decision of the Social Security Commissioner Andrew M. Saul denying his application for period of disability and disability benefits under the Social Security Act ("Act"). The Court[3] has reviewed the parties' briefs and the entire administrative record, including the hearing transcript and the medical evidence. For the reasons set forth below, the Court affirms Defendant's denial of Plaintiff's application.

### I.    Procedural History

On February 6, 2015, Plaintiff filed an application for Disability Insurance Benefits, alleging disability beginning October 3, 2014. (Tr. 109-12) Plaintiff complained of osteoarthritis and gout. (Tr. 49) The Social Security Administration ("SSA") denied Plaintiff's claims, and he filed a timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 49-63, 66-

---

[1] In the caption of his brief [ECF No. 14], Plaintiff identifies himself as "Garry Wayne Conder." In other materials, Plaintiff is identified as "Gary Conder." The Court refers to Plaintiff as "Gary Conder."

[2] At the time this case was filed a different official was named as Defendant in this proceeding. Andrew M. Saul became the Commissioner of the Social Security Administration on June 4, 2019. The Court orders the Clerk of Court to substitute Andrew M. Saul as the Defendant in this matter. See Fed. R. Civ. P. 25(d).

[3] The parties consented to the exercise of authority by a United States Magistrate Judge pursuant to 28 U.S.C. Section 636(c).

67) On January 24, 2017, the ALJ conducted a hearing at which Plaintiff and a vocational expert testified. (Tr. 28-48)

In a decision dated May 5, 2017 (Tr. 19-27), the ALJ found that Plaintiff "has not been under a disability, as defined in the Social Security Act, from October 3, 2014, through the date of this decision[.]" (Tr. 26) Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review on February 23, 2018. (Tr. 1-6) Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the SSA's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## II. Evidence Before the ALJ

A. Testimony

Plaintiff and a vocational expert testified at the administrative hearing on January 24, 2017. (Tr. 28) The ALJ began by examining Plaintiff who testified that he was forty-eight years old and lived with his wife and two teenage sons. (Tr. 35-36) He graduated from high school and had no college, job, or vocational training. (Id.) Plaintiff last worked as an auto mechanic in October 2014. (Tr. 36, 44-45)

When the ALJ asked Plaintiff to describe "what it is that prevents you from getting a job and keeping a job," Plaintiff responded, "[w]ell I can't carry any kind of weight on my feet and my feet and my joints are so swoled [sic] up, my big toes are so swoled [sic] up . . . and [my] hands hurt all the time." (Tr. 37) He stated, "I walk a little, you know if I'm on my feet [fifteen] minutes, that's causing me problems for the next day, you know. I don't walk much." (Tr. 38) With regard to his feet, Plaintiff stated he has arthritis in his big toe on both feet and "can't put any substantial weight on that toe," which is "about as big as a lemon." (Tr. 37) He stated that his toes had "no

2

bending ability" and that when he had to "tip-toe [while working on cars] … that's where all the pain really got really bad." (Tr. 40)

According to Plaintiff, his doctor ordered x-rays and diagnosed him with "rheumat[oid] arthritis." (Tr. 39) His treatment included "special shoes," insoles, and "arthritis medicine and pain medicine," which "seem[ed] to [help] a little." (Tr. 37-38)

With respect to his hands, Plaintiff explained: "They're always hurting when I move them or any kind of repetition … I just can't do the wrench work." (Tr. 37, 39) Plaintiff is unable to drive because of the pain in his wrists, and feels pain when he opens doors or tries to "grab something to pull." (Tr. 36, 41) Additionally, Plaintiff stated his fingers are becoming increasingly stiff and he is not able to "really straighten them out." (Tr. 40)

Plaintiff also "tore" his right shoulder and "can't lift anything." (Id.) Plaintiff has difficulty reaching overhead. (Tr. 41) For example, Plaintiff testified that he could not raise a car hood "because of the pain." (Id.)

Although Plaintiff attended religious services, he no longer hunted or went shopping, and was unable to stand enough to do dishes or climb stairs. (Tr. 38-43) Walking and standing caused "the same kind of pain." (Tr. 39) Plaintiff testified that sitting did not make his pain worse but it was "just a pain all day." (Id.) He testified that the pain started "really getting bad" in 2012. (Tr. 41-42)

The ALJ examined the vocational expert, who identified Plaintiff's past work as an auto mechanic. (Tr. 44-45) The ALJ asked the vocational expert to consider a hypothetical individual with the same age, educational background, and work history as Plaintiff who could:

> occasionally lift twenty pounds, frequently ten. Walk or stand two hours out of an eight-hour day. Sit for six hours out of an eight-hour day. He should never climb, never crouch, and never crawl. He'[d] be limited to frequent handling, fingering, and feeling. He'd be limited to no overhead reaching and handling with the right

upper extremity. He['d] need[] to avoid unprotected heights and hazardous moving machinery.

(Id. at 45.) The vocational expert testified that such an individual could not perform Plaintiff's past work but could work as an addresser, document preparer, or callout operator, which are characterized as sedentary jobs. (Id.) The ALJ asked the vocational expert to reconsider this individual with the modification that he "may be able to walk or stand two hours out of an eight-hour day but [it] would be fifteen minutes at a time. And he would be limited to occasional handling, feeling, and fingering." (Id.) The vocational expert testified that those limitations would eliminate all jobs in the national economy. (Tr. 45-46)

The ALJ also asked if the Dictionary of Occupational Titles ("DOT") specifically addressed "overhead reaching and handling." (Tr. 46) The vocational expert testified that it did not. Id. However, the vocational expert testified that, in his experience, the three jobs he listed did not require any overhead reaching and handling. Id. The vocational expert stated that he based his conclusions on "[forty-two] years of experience working with clients and employers." Id.

B. Relevant Medical Records

Plaintiff's primary care physician, Dr. Timothy McPherson, D.O., examined Plaintiff numerous times between June 2014 and January 2017. (Tr. 230-41, 271-305) In January 2015, Plaintiff reported "difficulty standing on his feet because of his pain in both great toes." (Tr. 231) Plaintiff identified his pain level at a "nine" and told Dr. McPherson he was not taking any medication because over-the-counter medication had not helped. (Id.) Dr. McPherson observed that Plaintiff had "normal gait and station" and "no contractures, malalignment, crepitus, or pain with motion" but "tenderness and bony deformities (bilateral great toes… bilateral hands with swelling and deformities consistent with osteoarthritis) … and normal movement in all

4

extremities." (Tr. 232) Dr. McPherson described Plaintiff's ambulation as "limited" and prescribed Zorvolex for his pain. (Tr. 231-32)

Plaintiff visited Dr. Barry Burchett, M.D., for a consultative orthopedic examination in May 2015. (Tr. 247-254) Plaintiff's chief complaint was pain in his toes and his hands. (Tr. 248) Dr. Burchett reviewed records from Plaintiff's visits with Dr. McPherson and previous lab work, and he performed an independent analysis. (Tr. 248) Dr. Burchett stated that Plaintiff had taken "multiple blood tests, which have been negative for various rheumatoid arthritis tests and gout." (Id.) Dr. Burchett wrote that Plaintiff "ambulates with an awkward gait, but without any specific limp. He has noticed that the toes are stiff as he walks. The claimant does not require the use of a handheld assistive device. The claimant appears stable at station and comfortable in the supine and sitting positions." (Tr. 249) Plaintiff was able to walk on his heels and his toes, performed tandem gait well, and had "mild difficulty" standing on the right foot. (Tr. 250-51)

Dr. Burchett examined Plaintiff's hands and wrote:

> There is no atrophy, redness, warmth, or tenderness. The hands can be fully extended. A fist can be made with both hands. All fingers can oppose … The claimant can write. A coin can be picked up with either hand without difficulty. Range of motion of the joints of the fingers of both hands is normal. There is slight to mild generalized swelling about the index fingers bilaterally.

(Tr. 250) Dr. Burchett reported his impression as "multiple locations of osteoarthritis," and stated in his summary that Plaintiff had "polyarthralgias, particularly in his great toes and over the fingers and the wrist." (Tr. 251)

On the same day he visited Dr. Burchett, Plaintiff underwent an MRI of his right hand. (Tr. 247) The images revealed "bones uniformly mineralized. No subarticular bony erosions or periarticular calcifications." (Id.) There was no visible joint space narrowing and "no unusual soft tissue swelling." (Id.) The overall impression from the exam was of "[r]adiologically normal

5

bone structure of the right hand and wrist without identifiable arthritic changes. Modest curvature of the fifth metacarpal may be a post-traumatic appearance." Id.

In October 2015, Plaintiff visited Dr. David Pfefferkorn, M.D., for a disability evaluation.[4] (Tr. 255-57) Dr. Pfefferkorn recorded that Plaintiff had "great difficulty walking." (Tr. 257) He noted "marked swelling of the interphalangeal joints of the first toes bilaterally" and "significant hallux rigidus present in both great toes." (Id.) Dr. Pfefferkorn reported that Plaintiff had "probable rheumatoid arthritis with involvement of multiple joints." (Id.) "Because of this," Dr. Pfefferkorn opined, "I find him to be disabled and his disability to be permanent." (Id.)

In June 2016, Dr. McPherson noted that the severity of Plaintiff's pain was "improving" and that his ability to perform activities of daily life "improve[d] with medication." (Tr. 294) Dr. McPherson observed Plaintiff now "ambulating normally" with "normal gait and station." (Tr. 295) He observed "normal movement of all extremities" but "pain with motion (bilateral feet), and bony deformity (bilateral hands and feet)." (Id.) Dr. McPherson prescribed hydrocodone/acetaminophen tablets for Plaintiff's pain. (Id.)

In August 2016, Dr. McPherson noted Plaintiff "ambulating normally" but now with pain and limited range of motion in his right shoulder.[5] (Tr. 292) During regular visits in September, October, November, December 2016 and January 2017, Dr. McPherson noted Plaintiff continued to feel pain, especially in his right shoulder, but was "ambulating normally." (Tr. 277, 280, 283, 286, 289) Dr. McPherson also noted that Plaintiff's activities of daily life continued to improve

---

[4] Dr. Pfefferkorn's determination lists the evaluation date as October 15, 2018. His electronic signature on the document is dated "10/16/2015." (Tr. 257) Plaintiff's brief and the "Court Transcript Index" for the proceedings before the Social Security Administration both list the year of examination as 2015. (Pl.'s Br. at 10; Court Transcript Index for Exhibit 7F.)

[5] In November 2016, Plaintiff told Dr. McPherson that he had pulled his right shoulder "while hanging in a tree" in "early 2016." (Tr. 285)

6

with medication, which he continued to prescribe. (Tr. 276, 278, 279, 281, 282, 284, 285, 287, 288, 290)

### III. Standard for Determining Disability Under the Act

Eligibility for disability benefits under the Act requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also 20 C.F.R. § 404.1505(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy…." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. § 404.1520. These steps require a claimant to show that he or she: (1) is not engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments which significantly limits his or her physical or mental ability to do basic work activities or (3) has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) is unable to return to his or her past relevant work; and (5) has impairments that prevent him or her from doing any other work. Id.

### IV. The ALJ's Determination

The ALJ applied the five-step evaluation set forth in 20 C.F.R. § 404.1520 and found that Plaintiff had not been engaged in substantial gainful activity since October 3, 2014, the alleged onset date of disability, and had the severe impairments of osteoarthritis and degenerative joint

disease of the right shoulder. (Tr. 21) The ALJ found, however, that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525 and 404.1526). (Tr. 22)

After considering the entire record, in light of the requirements of 20 CFR § 404.1529, the ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform sedentary work with the following limitations:

> [L]ift [twenty] pounds occasionally and [ten] pounds frequently. He can stand or walk for two hours out of an eight-hour workday and sit for six hours out of an eight-hour workday. He should never climb, crouch, or crawl. He is limited to frequent handling, feeling, and fingering. He is limited to no overhead reaching and handling with the right upper extremity. He must avoid unprotected heights and hazardous moving machinery.

(Id.)

The ALJ reviewed Plaintiff's testimony, work activities, and medical records. (Tr. 22-24) Noting that Plaintiff's medically determinable impairments could reasonably be expected to produce the disabling symptoms Plaintiff described, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence." (Tr. 23) The ALJ explained, "in contrast to [Plaintiff's] allegations, multiple blood tests have reportedly been negative for gout, and for rheumatoid arthritis as well, and x-rays of the right hand did not show any unusual soft tissue swelling or arthritic changes." (Tr. 21) The ALJ further stated:

> [Plaintiff] reportedly injured his right shoulder in early 2016, and a[n] MRI reportedly revealed a rotator cuff tear (Ex. 10F/6). However, while subsequent exams have shown some pain and limited range of motion in the right shoulder, they do not document any loss of strength and consistently indicate that he is able to walk with a normal gait and station, and that he has normal movement in all other extremities, as well as full range of motion throughout the neck and spine. Sensation, reflexes, and coordination have also consistently been within normal

8

limits (Ex. 1F/3; 10F/6-25). Thus, while [Plaintiff] may indeed have some joint and shoulder pain, the clinical findings do not fully support the extreme limitations he alleges, such as being unable [to] care for himself or do household chores secondary to chronic pain.

(Tr. 24)

The ALJ considered all of the medical evidence and determined that "the objective findings in this case fail to provide strong support for [Plaintiff]'s allegations of disabling limitations."[6] (Tr. 23) Specifically, the ALJ acknowledged Plaintiff's history of treatment for "neck, shoulder, hand and foot pain" but concluded that in the record as whole, Plaintiff "has not presented with any chronic motor, sensory, strength, or reflex deficits reasonably consistent with the severity and degree of limitation [he] asserts." (Id.)

The ALJ found that Plaintiff was not capable of performing his past relevant work as an auto mechanic but he was "capable of making a vocational adjustment to other work, which exists in significant numbers in the national economy." (Tr. 24-25) The ALJ relied on the vocational expert's testimony that Plaintiff could perform the jobs of addresser, document preparer, and callout operator. (Tr. 25-26) Thus, the ALJ concluded that Plaintiff had not been under a disability from October 3, 2014 through the date of the decision. (Tr. 26)

V.     **Standard for Judicial Review**

The Court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). In determining

---

[6] The ALJ also gave no weight to Dr. Pfefferkorn's opinion that Plaintiff was permanently disabled because (1) his opinion was "not well supported by the other evidence of record" and (2) is a conclusory determination relating to the Commissioner's disability determination rather than "a function-by-function analysis of [Plaintiff]'s ability to perform basic work activities." (Tr. 24)

9

whether the evidence is substantial, a court considers evidence that both supports and detracts from the Commissioner's decision. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). However, a court "do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, so long as those determinations are supported by good reasons and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).

"If, after reviewing the record, the court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Partee v. Astrue, 638 F.3d 860, 863 (8th Cir. 2011) (internal quotation marks omitted) (quoting Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005)). The Eighth Circuit has repeatedly held that a court should "defer heavily to findings and conclusions" of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

**VI.    Discussion**

Plaintiff claims that the ALJ's decision is not supported by substantial evidence on the record as a whole. (Pl.'s Br. at 6.) Specifically, Plaintiff argues that the ALJ erred in: (1) failing to resolve a possible conflict between the vocational expert's testimony and the DOT requirements for the jobs the VE testified that Plaintiff could perform; and (2) engaging in a flawed credibility analysis. (Id. at 6-8.) Defendant responds that Plaintiff's identification of a possible conflict between the vocational expert's testimony and the DOT is based on a misreading of the ALJ's RFC finding and the hypothetical question. (Def.'s Br. at 10-11.) Defendant further asserts that the ALJ discussed his consideration of multiple appropriate factors, and substantial evidence supports the ALJ's findings. (Id. at 3-10.)

10

A. Potential conflict between the vocational expert's testimony and the DOT

Plaintiff contends that there was a possible conflict between the vocational expert's testimony that Plaintiff could perform the jobs of addresser, document preparer, and callout operator, and the requirements for those jobs listed in the DOT. (Pl.'s Br. at 6-8.) Plaintiff argues that, as described in the DOT, the three jobs identified by the vocational expert require either frequent or occasional handling and the ALJ concluded Plaintiff "cannot perform *any* handling with his dominant right hand." (Id. at 7 (emphasis in original).)

Plaintiff misreads the ALJ's RFC determination. The ALJ limited Plaintiff to "frequent handling, feeling, and fingering" and did not further limit the "frequent handling, feeling, and fingering" to Plaintiff's left hand only. (Tr. 22) The ALJ's limitation is supported by Dr. Burchett's May 2015 examination records reporting that Plaintiff had normal range of motion of the finger joints, could fully extend his hands and oppose his fingers, was able to write, could make a fist with each hand, and picked up a coin with each hand without difficulty. (Id. at 23-24, 250).

The ALJ did, however, limit Plaintiff to "no <u>overhead</u> reaching and handling with the right upper extremity" (emphasis added). (Id. at 22.) The limitation on overhead reaching and overhead handling with the right upper extremity is consistent with the severe impairments identified by the ALJ: "osteoarthritis and degenerative joint disease of the right shoulder." (Tr. 21)

The ALJ asked the vocational expert if the DOT addresses "overhead reaching and handling," to which the vocational expert responded, "it does not." (Id. at 46.) Based on his forty-two years of experience, the vocational expert further testified that the three jobs he suggested that Plaintiff could perform did not require "any overhead reaching and handling." (Id.) The ALJ relied on the vocational expert's testimony in concluding Plaintiff could perform the three jobs suggested by the vocational expert.

11

Plaintiff does not challenge the vocational expert's testimony that the DOT fails to address overhead reaching requirements of listed jobs, but urges the vocational expert's "testimony that the DOT does not address the handling requirements of th[e three suggested] jobs is plainly false." (Pl.'s Br. at 7-8 (emphasis in original).) Plaintiff also argues that the vocational expert testified that "in his experience the[ three proposed] jobs do not require *any* handling," but the DOT reports the proposed jobs require frequent or occasional handling. (Id. at 8.)

Plaintiff bases his challenges to the vocational expert's testimony on an inaccurate characterization of that testimony. In the hypothetical, the ALJ asked the vocational expert to consider an individual "limited to frequent handling, fingering, and feeling. He'd be limited to no overhead reaching and handling with the right upper extremity."[7] (Tr. 45) The vocational expert answered that the individual would be capable of performing the three jobs he stated Plaintiff could perform. (Id.) Because both the hypothetical individual and Plaintiff are limited only to no overhead reaching and no overhead handling, and have the limitation of frequent handling, fingering, and feeling, there is no conflict between the vocational expert's testimony and the DOT regarding the handling requirements of the three proposed jobs. (Tr. 21, 23-24, 45)

The ALJ reasonably concluded that "the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (Tr. 26) Due to the absence of conflict between the vocational expert's testimony and the DOT, which does not expressly address overhead reaching or overhead handling, and the substantial evidence supporting the hypothetical to the vocational expert, the ALJ properly relied on the vocational expert's testimony.

---

[7] While the question could have been more exactingly drafted, "[i]n conducting [the court's] limited and deferential review of the final agency determination under the substantial-evidence standard, [the court] must view the record in the light most favorable to that determination. . . . [The court] must strive to harmonize statements where possible; [the court] may neither pick nits nor accept [a litigant]'s invitation to rely upon perceived inconsistencies." Chrismarich v. Berryhill, 888 F.3d 978, 980 (8th Cir. 2018) (per curiam).

See Twyford v. Social Sec. Admin., 929 F.3d 512, 519 (8th Cir. 2019) (the ALJ was entitled to rely on the vocational expert's testimony when the ALJ described the plaintiff's limitations to the vocational expert and the vocational expert testified to possible jobs that, based on her experience, did not include overhead reaching, because the vocational expert's testimony did not conflict with the DOT).

B. Plaintiff's subjective complaints

Plaintiff argues that the ALJ's credibility analysis was flawed in that the ALJ: (1) did not mention SSR 16-3p,[8] Polaski[9] or the factors in those authorities in his written opinion, and (2) gave no legitimate reasons for discrediting Plaintiff's testimony. (Pl.'s Br. at 8-10). Defendant counters that: the ALJ properly evaluated Plaintiff's symptoms under 20 C.F.R. § 404.1529, Plaintiff did not meet his burden to prove a disabling RFC, and substantial evidence supported the ALJ's evaluation of Plaintiff's subjective complaints. (Def.'s Br. at 3, 8)

Before determining a claimant's RFC, the ALJ must evaluate the credibility of the claimant's subjective complaints. Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007) (internal quotation marks omitted) (quoting Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001)). In doing so, the ALJ considers all evidence relating to the claimant's subjective complaints, including: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) any functional restrictions. Polaski, 739 F.2d at 1322; see also, 20 C.F.R. § 404.1529. An ALJ may also consider the absence of objective medical evidence to support the

---

[8] SSR 16-3p states that "[i]n addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3)[.]" Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017).

[9] The "Polaski factors" are factors set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).

13

complaints, but may not rely solely upon this factor to discredit the claimant. See Jones v. Astrue, 619 F.3d 963, 975 (8th Cir. 2010) (internal quotation marks omitted) (quoting Halverson v. Astrue, 600 F.3d 922, 931-32 (8th Cir. 2010)).

Here, the ALJ appropriately "considered all symptoms . . . based on the requirements of 20 CFR § 404.1529." (Tr. 22) First, the ALJ considered Plaintiff's reported daily activities, noting that Plaintiff "says he does as little as possible throughout the day… and that he depends on family members to cook, shop, and do other housework." (Tr. 23) The ALJ also considered the frequency and duration of Plaintiff's pain, recognizing that Plaintiff alleged "almost constant pain and swelling in all joints" and "testified that his hands hurt all the time." (Id.) The ALJ reviewed Plaintiff's history of treatment and considered Plaintiff's alleged functional restrictions, including Plaintiff's allegations "that he [could] not walk, lift items, or use his hands properly." Id.

Upon consideration of the relevant factors, the ALJ found that, while Plaintiff's "medically determinable impairments could reasonably be expected to produce" the disabling symptoms Plaintiff described, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence[.]" (Tr. 23) The ALJ wove his credibility analysis into the RFC determination, highlighting the inconsistencies in the record. (Tr. 22-24)

The ALJ found that Plaintiff's mobility was less limited than he alleged. The ALJ acknowledged Plaintiff's testimony about his extremely limited daily activities and noted that "although he alleges that he can only walk several feet and he requires a cane anytime he walks, Dr. Burchett noted that [Plaintiff] did not use an assistive device."[10] (Tr. 23) The ALJ cited Dr.

---

[10] The ALJ does not explicitly refer to Plaintiff's March 12, 2015 Function Report but in that report Plaintiff claimed he had to use a cane anytime he had to walk, could only walk "several feet" before needing to rest, and after walking "sometimes it w[ould] be days before [he] c[ould] resume any activity." (Tr. 153-54)

14

Burchett's observations that "the claimant appeared stable at station … was able to walk on his heels and toes with only mild difficulty, he performed tandem gait well, and he was able to do a full squat." (Id.) The ALJ correctly noted that Plaintiff's examinations "consistently indicate that he is able to walk with a normal gait and station." (Tr. 24) The discrepancy between the objective medical evidence and Plaintiff's account of his daily activities supports the ALJ's decision to discredit Plaintiff's subjective complaints. See Chaney v. Colvin, 812 F.3d 672 1148 (8th Cir. 2001) ("An ALJ may view '[a]cts inconsistent with a claimant's assertion of disability' to 'reflect negatively upon that claimant's credibility'") (quoting Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001)).

Additionally, the ALJ found that Plaintiff's hands were more functional than he described. (Tr. 23-24) The ALJ found, based on the objective medical evidence, that Plaintiff "was able to write, make a fist, and pick up a coin without difficulty in either hand, in contrast to his allegations that he is unable to use his hands properly." (Id.) The ALJ reviewed the record and noted that Plaintiff's sensation, reflexes, coordination, and mobility were generally within normal limits. (Id. at 24.) After considering the entire record, including Plaintiff's daily activities and testimony, the ALJ determined that Plaintiff's "subjective complaints do not warrant any additional limitations beyond those established in the residual functional capacity" determination. (Id.)

Although the ALJ did not expressly mention Polaski, he properly considered many of the factors in Polaski and found that Plaintiff's subjective complaints were not entirely credible. See Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (finding analysis adequate when "the ALJ never expressly cited Polaski … [but] cited and conducted an analysis pursuant to 20 C.F.R. §[] 404.1529 . . . , which largely mirror[s] the Polaski factors"). "The ALJ is not required to discuss methodically each Polaski consideration, so long as he acknowledged and examined those

considerations before discounting [Plaintiff's] subjective complaints." Partee, 638 F.3d at 865 (internal quotation marks omitted) (quoting Lowe v. Apfel, 226 F.3d 969, 971 (8th Cir. 2000)). Because the ALJ's determination to discount Plaintiff's subjective complaints was supported by good reasons and substantial evidence, and was based on consideration of relevant factors, the Court defers to his determination.

### VII. Conclusion

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports the ALJ's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that Andrew M. Saul, Commissioner of the Social Security Administration, is **SUBSTITUTED** as the Defendant in this proceeding.

**IT IS FURTHER** ORDERED that the final decision of the Commissioner denying Social Security benefits to Plaintiff is **AFFIRMED.**

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of September, 2019